RODEWAY INNS INTERNATIONAL, INC., Plaintiff,

v.

AMAR ENTERPRISES, INC., Defendant.

Civ. A. No. J89–0355(L).

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 16, 1990.

**366**

Ernest G. Taylor, Jr., Paul W. Crutcher, Jackson, Miss., for plaintiff.

Joel W. Howell, III, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

*Introduction*

Plaintiff, Rodeway Inns International, Inc., brought this suit seeking injunctive relief and damages for trademark infringement in violation of the Lanham Act and damages for breach of contract. On July 26, 1989, this court entered an order upon agreement of counsel which dispensed with the need for a hearing on injunctive relief.[1] Presently before the court is plaintiff's motion for summary judgment. Defendant, Amar Enterprises, Inc., has responded to the motion, and the court has considered the memoranda together with attachments submitted by the parties in ruling on the motion.

*Parties and Facts*

Plaintiff is the owner of the registered trademark "Rodeway Inn" for use in connection with hotel and motel services and has developed a nationwide network of licensees who provide these services under the trademark. Defendant is the owner of a motel in Jackson, Mississippi. In 1984 the parties entered into a license agreement whereby defendant agreed to make royalty payments to plaintiff in exchange for the privilege of using plaintiff's trademark to identify its motel and services. Under the agreement, plaintiff had the right to terminate defendant's license if defendant failed to maintain certain standards of quality at its motel. An addendum to the license agreement set forth a schedule of modifications to be made to the motel building as a condition of the license. Subsequently the parties executed a sign lease agreement, wherein defendant agreed to pay a fee for the use of plaintiff's Rodeway Inn sign, and a reservation service agreement, wherein defendant agreed to pay certain commissions to plaintiff for use

---

1. The order provides that defendant will not use the trademarks of plaintiff.

of plaintiff's computerized reservation system.

In September 1988 plaintiff notified defendant of specific deficiencies at the motel. Second and third notices were given in October and December, respectively. Defendant failed to remedy the problems, and in March 1989 plaintiff terminated defendant's license. Plaintiff's affidavits indicate that after the termination, defendant continued to use the mark "Rodeway Inn" in connection with its establishment by using such items as matchbooks, soap and customer receipts bearing the mark and by identifying itself over the phone as "Rodeway Inn." Defendant also continued to display plaintiff's outdoor sign, although it altered the sign to read "Roadway Inn." The affidavit submitted by plaintiff supports its breach of contract claim by citing defendant's failure to pay royalties due, to maintain standards at the motel, to discontinue use of plaintiff's service mark when its license was terminated, to make lease payments on the sign, and to pay commissions.

In defense of plaintiff's motion, defendant has offered the affidavit of Amrut Patel, an officer and director. Mr. Patel makes three factual allegations in his affidavit: that plaintiff altered its standards after a change in the ownership of the plaintiff corporation, that before termination of the license plaintiff gave defendant certain oral assurances that it would assist defendant in securing refinancing but never assisted as promised, and that sometime after late May or early June 1989, Mr. Amrut removed from the motel all matchbooks and soaps bearing plaintiff's mark. He does not dispute the earlier or other uses of plaintiff's mark nor any of the facts upon which plaintiff's breach of contract claim is based.

*Liability for Trademark Infringement*

■■■ To prove trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 et seq. (1976 & Supp.1989), plaintiff must show that defendant used its trademark without plaintiff's consent and that such use was likely to cause confusion. 15 U.S.C. § 1114. Plaintiff's undisputed evidence demonstrates that both of these elements have been satisfied in the present case. Defendant does not deny that it used plaintiff's trademark after its right to do so was terminated, and there is no question that this "holding over" was likely to cause confusion. As one court has stated,

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks.... Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise therefore would be attributed to [the franchisor]. Because of this risk, many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement. *See, e.g., United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134 (3d Cir.1981); *Professional Golfers Ass'n v. Bankers Life & Casualty Co.,* 514 F.2d 665 (5th Cir. 1975); *Prompt Electric Supply Co., Inc., v. Allen–Bradley Co.,* 492 F.Supp. 344, 349 (E.D.N.Y.1980); *National Board of YWCA v. YWCA of Charleston, S.C.,* 335 F.Supp. 615, 628–629 (D.S. C.1971).

*Burger King Corp. v. Mason,* 710 F.2d 1480, 1492–93 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). The only argument asserted by defendant in its response to the motion is that plaintiff's failure to provide the promised refinancing constituted a "constructive breach" of the license agreement, barring plaintiff from any recovery. When considered with reference to plaintiff's trademark infringement claim, this defense appears to be one of either promissory estoppel or "unclean hands." However, defendant's evidence does not support estoppel because it indicates neither reliance nor detriment. A defense of unclean hands likewise fails on these facts. While a plaintiff's unclean hands may prevent him from recovering under the Lanham Act, *see Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir.1987), the defen-

dant must show injury as a result of the misconduct, *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir.1979), *cert. denied*, 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980), and the misconduct must have a direct nexus with the right asserted by plaintiff, *International Union, Allied Indus. Workers of America, AFL–CIO v. Local Union No. 589, Allied Indus. Workers of America, AFL–CIO*, 693 F.2d 666, 672 (7th Cir.1982); *see also Fuddruckers*, 826 F.2d at 847. The misconduct complained of by defendant does not meet these criteria.[2]

*Liability for Breach of Contract*

 As stated *supra*, defendant does not dispute any facts which are material to plaintiff's breach of contract claim.[3] Nevertheless, it contends that plaintiff should not prevail on its breach of contract claim because plaintiff's failure to provide the promised refinancing constituted a "constructive breach" of contract. Defendant has cited no authority for its proposition that the breach of one contract forecloses recovery of damages for breach of an entirely separate agreement, and the court is aware of none.[4] Moreover, defendant's affidavit does not indicate that this alleged promise gave rise to any agreement at all, nor any promise that could be enforceable on the basis of promissory estoppel, as the facts show neither consideration nor detrimental reliance.

*Damages under the Lanham Act*

By its motion plaintiff seeks summary judgment on the issue of damages for trademark infringement and in support thereof has offered the affidavit of James T. Wellbeloved, Director of Franchise Administration for defendant, and defendant's answers to plaintiff's interrogatories. Mr. Wellbeloved states the amounts due under the contracts, and the interrogatories show the amount of defendant's sales during the period of infringement. Defendant's affidavit attempts to refute plaintiff's evidence with the cursory statement disputing plaintiff's calculations. While it is doubtful whether defendant's affidavit raises a genuine issue of material fact as to the amount of damages for trademark infringement, the court nevertheless concludes for the reasons set forth *infra* that summary judgment should not be granted on this issue.

 The Lanham Act provides that a successful plaintiff may recover,

> subject to the principles of equity, ... (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

---

**2.** If defendant had a legitimate grievance with plaintiff regarding a promise to help secure refinancing, then the proper course for defendant would have been to assert a counterclaim. But, as one court has stated in a case involving similar facts, one who has a grievance with the owner of a trademark may not resort to self-help by flagrantly misappropriating that trademark. *Horn Abbot Ltd. v. Sarsaparilla Ltd.*, 601 F.Supp. 360, 370 (N.D.Ill.1984).

**3.** Defendant's statement that plaintiff changed its standards of quality does not create a genuine issue of material fact. Defendant points to nothing in the agreements or anywhere else that would indicate that plaintiff was not free to upgrade its standards should it so desire.

**4.** If the court were to construe this as a defense of "unclean hands," it would fail for the reasons stated *supra*.

15 U.S.C. § 1117. Plaintiff seeks recovery of profits in the amount of $66,320.80. This figure is based on undisputed evidence that defendant's sales during the period of the infringement totalled this amount. In a Lanham Act suit, the plaintiff has the burden only of showing the defendant's sales; the burden of showing any deductions for expenses or for amounts not attributable to the infringement is upon the defendant. 15 U.S.C. § 1117. Thus, considering defendant's failure to offer any evidence of deductions, it might appear that plaintiff has conclusively shown its entitlement to recover an amount equal to all of defendant's sales. However, the Act explicitly states that a court is to exercise its discretion and award damages subject to the principles of equity. Equity requires that any profits awarded to plaintiff be based, to the extent possible, on a realistic approximation of profits attributable to the infringement. *Marshak v. Green,* 505 F.Supp. 1054, 1062 (S.D.N.Y.1981). The court is unwilling to rule at this stage that plaintiff should recover a certain amount simply because defendant has essentially defaulted in its response to the motion for summary judgment.[5] Rather, the court chooses to reserve for trial its determination of the amount of defendant's profits which are attributable to the infringement and, assuming plaintiff should recover profits, whether the amount proved is either an inadequate or excessive amount to be awarded plaintiff.

■ Reserving the issue of damages for trial will also give plaintiff the opportunity to prove the amount of actual damages it has suffered due to defendant's infringement of plaintiff's trademark. In its brief, plaintiff contends that the court may base its determination of actual damages on the amount of liquidated damages due under the contract. This argument is without merit and is not supported by the case cited. In *Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562 (11th Cir.1986), the liquidated damages clause provided that the licensor could recover damages in the amount of the royalty fees and expenditures to attract a new franchisee for a period of two years after the termination of the franchise. Those same royalty fees and expenses were used to calculate plaintiff's actual damages for trademark infringement. The court, rejecting the defendant's argument that the damage award constituted an impermissible double recovery, held that a district court may base its determination of actual damages for trademark infringement on expenses and lost royalty fees, even if those same amounts are awarded as liquidated damages for breach of the trademark license agreement. However, the case does not suggest that a court may simply assume that a plaintiff's actual damages are equal to liquidated damages specified in the license agreement. A determination of damages under the Lanham Act must be supported by evidence of actual damage suffered by the plaintiff. *See, e.g., Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 745 (7th Cir.1985); *Burger King Corp. v. Mason,* 710 F.2d at 1493; *Vuitton Et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071, 1077 (S.D.N.Y.1979), *aff'd without opinion,* 622 F.2d 577 (2d Cir.1980). Once the court has determined the amount of actual damages, it may, in its discretion, increase the award to no more than three times the amount proved. But it must first have proof of the amount of the economic harm to plaintiff. Proof of the amount of liquidated damages due does not constitute proof that plaintiff has actually suffered damage in that amount.

*Damages for Breach of Contract*

■ In support of its claim for breach of contract damages, plaintiff relies on the affidavit of Mr. Wellbeloved, which specifies the amounts due under the contracts. These amounts total $47,932.62, of which $38,955.18 represents Mr. Wellbeloved's calculation of liquidated damages pursuant to the formula set forth in the license agreement. Simply stated, the formula

---

**5.** Even if a movant is entitled to summary judgment, a district court may, in its discretion, deny the motion in order to give the parties the chance to fully develop the facts at trial. *See Marcus v. St. Paul Fire and Marine Ins. Co.,* 651 F.2d 379 (5th Cir. Unit B 1981).

provides for damages based on royalties and other fees that were due during the twelve months prior to the termination of the agreement. Those fees, in turn, are calculated based upon defendant's gross receipts. Mr. Wellbeloved's affidavit does not indicate what specific figures he used to calculate the amount of liquidated damages and is accompanied by no documentation supporting any of the amounts claimed. Notwithstanding the fact that the only evidence offered by defendant is the statement in Mr. Patel's affidavit in which he disputes plaintiff's calculation of damages, the court concludes that, considering the failure of plaintiff to offer evidence of the amounts upon which its calculation of damages is based, summary judgment for the damages claimed for breach of contract is inappropriate at this time.[6]

*Conclusion*

No genuine issue of material fact exists as to defendant's liability for trademark infringement and breach of contract. However, for the reasons stated *supra*, the court concludes that summary judgment on the issue of damages is not in order, and the court will therefore reserve for trial the determination of the amount to be awarded plaintiff. Accordingly, plaintiff's motion for summary judgment is hereby granted on the issue of defendant's liability for trademark infringement and breach of contract but denied on the issue of damages.

SO ORDERED.