**Roy GRIFFITH, Plaintiff,**

v.

**KEYSTONE STEEL & WIRE COMPANY, A DIVISION OF KEYSTONE CONSOLIDATED INDUSTRIES, INC., Charlie Cutting, Lee Langley, Harold Scoby, Rick Jay, and Eric Eberly, Defendants.**

No. 93–1504.

United States District Court, C.D. Illinois.

July 22, 1994.

Ambrose V. McCall, IL, for plaintiff.

Michael R. Lied, James E. Konsky, Michael D. Gifford, Peoria IL, for defendants.

### ORDER

MIHM, Chief Judge.

Currently pending before the Court are the Defendants' Motions to Dismiss Plaintiff Roy Griffith's Complaint alleging sexual harassment in violation of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* For the reasons set forth below, this Court adopts the Report and Recommendation of Magistrate Judge Kauffman (# 33) and the Defendants' Motions to Dismiss (# 17, 21, 23) are DENIED.

### FACTS

Roy Griffith is employed as a maintenance electrician by Defendant Keystone Steel & Wire ("Keystone"), a corporation doing business in the State of Illinois. Complaint, pp. 2–3. Also named as Defendants in this suit are Charlie Cutting, Lee Langley, Harold Scoby, Rick Jay, and Eric Eberly, all of whom were employed as foremen with the Defendant Keystone at the time of the alleged violation. Complaint, p. 2.

Griffith and other Keystone employees are represented by the Independent Steel Workers Alliance and are employed pursuant to a collective bargaining agreement ("CBA"). Keystone's Motion to Dismiss, p. 2. The CBA contains a provision stating that

It is the continuing policy of the Company and the Union that the provisions of this Agreement shall be applied to all employees without regard to sex, race, color, religious creed, or national origin. Keystone's Memorandum in Support of Motion to Dismiss, Exhibit 1, p. 7, paragraph 1.5.

The CBA further provides a grievance procedure to settle any differences that arise between the company and union member employees. The first step of the grievance process is for an employee to discuss the problem with his foreman. *Id.,* p. 55, paragraph 16.1. If not resolved at this stage, the grievance may be filed in written form and go through various stages of review. *Id.,* pp. 55–59. At the end of these stages of review, if the grievance is not settled, it "may be presented to arbitration." *Id.,* p. 59, paragraph 16.541.

From mid-October 1992 through January 1993, Griffith alleges that he was subjected to "unwelcome sexual advances, requests for sexual favors, [and] verbal or physical conduct of a sexual nature" by Mr. Cutting "in exchange for favorable working conditions or terms." Complaint, p. 3. Griffith states that he did not encourage or consent to this conduct, which he claims had a detrimental effect on his employment and created a hostile and abusive work environment. *Id.,* pp. 3–4. He repeatedly complained to Defendants Cutting, Langley, Scoby, Jay, and Eberly about the harassment but they "encouraged, enjoyed, approved or ratified" the conduct. *Id.,* p. 4. Griffith filed a grievance on or about February 2, 1993. Keystone's Motion to Dismiss, p. 3. On or about April 12, 1993, Griffith filed a charge of discrimination with the State of Illinois Department of Human Rights, which then filed the charge with the Equal Employment Opportunity Commission ("EEOC"). Complaint, p. 2. The EEOC issued Griffith a right to sue letter on August 28, 1993. *Id.*

Griffith claims that the sexual harassment interfered with his work environment, causing him to endure pain and suffering, seek

medical care and counseling, and avoid overtime work. Complaint, pp. 4–5. In Count I of his Complaint, Griffith seeks compensatory and punitive damages from Defendant Keystone. *Id.,* pp. 1–6. In Count II, he asks for compensatory and punitive damages from Defendant Cutting. *Id.,* pp. 6–11. In Counts III through VI, Griffith seeks compensatory and punitive damages from Defendants Langley, Scoby, Jay, and Eberly respectively. *Id.,* pp. 11–30.

Defendant Keystone filed a Motion to Dismiss the Complaint (# 17). Defendant Cutting filed a Motion to Dismiss Count II of the Complaint (# 23). Defendants Langley, Scoby, Jay, and Eberly filed a Motion to Dismiss Counts III through VI of the Complaint (# 21). Magistrate Judge Kauffman recommended that the Defendants' Motions to Dismiss be denied.

## DISCUSSION

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The factual allegations of the complaint are to be construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 235–37, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).[1]

■ Keystone moves to dismiss Griffith's Complaint for lack of subject matter jurisdiction because the terms of the CBA between Keystone and the union provide the grievance procedure and arbitration as the appropriate remedy. As authority for this proposition, Keystone cited *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) and a series of cases following the Supreme Court's decision in that case.

This Court agrees with Magistrate Judge Kauffman that *Gilmer* does not apply to the facts of this case. Unlike the plaintiff in *Gilmer,* Griffith did not sign an individual agreement to arbitrate. He is only bound by the union's CBA. He is not suing to enforce contractual rights, which would be covered by the CBA, but rather his statutory rights under Title VII.

In *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 38–40, 94 S.Ct. 1011, 1015, 39 L.Ed.2d 147 (1974), the arbitration clause in question was part of a CBA and the plaintiff was suing under the equal employment provisions of Title VII. The Court held that contractual and statutory rights are "distinctly separate" and, therefore, Title VII rights cannot be waived under the contractual provisions of a CBA. *Alexander,* 415 U.S. at 49–52, 94 S.Ct. at 1020–21. *See also, Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) and *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984).

This Court agrees with the Magistrate that the facts of this case fall more squarely under the *Alexander/Barrentine/McDonald* line of precedent, which recognize Griffith's right to pursue his statutory rights outside of the arbitration process established by the CBA. Accordingly, Keystone's Motion to Dismiss will not be granted under this theory.

■ In the alternative, Keystone argues that Griffith's Complaint should be dismissed because the Complaint contains allegations of quid pro quo sexual harassment while the EEOC charge did not. Thus, Keystone contends that Griffith has failed to satisfy the condition precedent of submitting a corresponding charge to the EEOC prior to filing his Complaint in court.

■ In general, a Title VII plaintiff cannot bring claims in a lawsuit that were not brought in his EEOC charge. *Taylor v. Western–Southern Life Ins. Co.,* 966 F.2d 1188, 1194 (7th Cir.1992). Although a plain-

---

1. If, on a motion to dismiss under Rule 12(b)(6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R.Civ.P. 12(b)(6). Defendant Keystone's Motion to Dismiss requires the Court to consider information contained in the collective bargaining agreement, as well as Griffith's EEOC charge. Accordingly, Keystone's Motion to Dismiss will be treated as a motion for summary judgment under Fed.R.Civ.P. 56.

tiff "must file a timely charge with the EEOC encompassing the acts complained of as a prerequisite to filing suit in federal court," the Seventh Circuit has held that this requirement should not be interpreted technically to interfere with Title VII's broad remedial purpose and underlying policy attempting to rectify a long history of discrimination. *Babrocky v. Jewel Food Co. & Retail Meatcutters,* 773 F.2d 857, 863 (7th Cir.1985). Exact correspondence between the EEOC charge and the subsequent Complaint is not required, because the EEOC charge only contains factual statements, "which may implicate several different types of illegal discrimination." *Id.* at 865–66. Thus, in a Title VII suit, the complaint may properly encompass any discrimination that is like or reasonably related to the allegations in the EEOC charge. *O'Rourke v. Continental Casualty Co.,* 983 F.2d 94, 97 (7th Cir.1993).

In this case, Griffith's EEOC charge stated facts relating to repeated acts of alleged sexual harassment against him during the course of his employment with Keystone. Griffith's Complaint contains these same factual assertions and alleges sexual harassment in violation of his Title VII rights. In both documents, Griffith presents an identical set of facts and alleges that the conduct constitutes sexual harassment. Therefore, this Court finds that the allegations in Griffith's Complaint are reasonably related to his EEOC charge and agrees with Magistrate Judge Kauffman that there is no fatal variance between the two documents. Accordingly, Keystone's Motion to Dismiss must also be denied under this theory.

■ The individual defendants also move to dismiss Counts II through VI of the Complaint on the theory that they are low level supervisors, which do not constitute "employers" under 42 U.S.C. § 2000e(b), and therefore cannot be held liable in their personal capacities. The Defendants' Motions to Dismiss rely on *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993), which held that individual supervisors are not liable for damages under either Title VII or the ADEA.

The Seventh Circuit has not addressed the issue of whether an individual supervisor can be held personally liable for sexual harassment in the workplace. There is a split of opinion among the circuits on this issue. In addition to the Ninth Circuit in *Miller,* the Fifth and Eleventh Circuits have also held that the statutory scheme of Title VII does not allow personal liability for employees. *See Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir.1994); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). However, the Fourth and Sixth Circuits have allowed individual liability to be imposed against supervisors for violations of Title VII. *See Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir. 1989), *aff'd in pertinent part,* 900 F.2d 27 (4th Cir.1990); *Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir.1986). Although the Defendants correctly note that the Seventh Circuit ADEA cases cited by the Magistrate do not specifically address the questions raised in a case under Title VII, these cases provide the best indication of how the Seventh Circuit would decide the issue in light of the substantial similarity between the liability schemes of Title VII and ADEA.

The plain language of both the ADEA, 29 U.S.C. § 630(b), and Title VII, 42 U.S.C. § 2000e(b), define an employer to include a person acting as the agent of the employer. The statute does not limit the liability of the agent to only his official capacity. Furthermore, the 1991 Amendments to the Civil Rights Act expanded the available remedies to include compensatory damages and punitive damages, which can be imposed against individual defendants. Cases holding that the agents of an employer may not be held personally liable under Title VII are "inconsistent with the broad remedial purposes of the statute." *Raiser v. O'Shaughnessy,* 830 F.Supp. 1134, 1137 (N.D.Ill.1993).

■ Title VII defines "employer" as:

a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person* ... 42 U.S.C. § 2000e(b). (Emphasis added).

Under the terms of the statute, an employer is prohibited from discriminating against any

**806**

individual because of that individual's sex. 42 U.S.C. § 2000e–2(a)(1). The fact that Congress included agents in the definition of "employer" is significant. The Supreme Court has recognized this by finding that Congress intended for courts to "look to agency principles for guidance" in determining liability for sexual harassment under Title VII. *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 71–73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). The Restatement (Second) of Agency states that "Principal and agent can be joined in one action for a wrong resulting from the tortious conduct of an agent ... and a judgment can be rendered against each." Rest. (2d) Agency, § 359c(1) (1957). Thus, the law of agency recognizes personal liability for agents.

The liability provision of Title VII permits suits against individual employees who qualify as employers as defined in the statute. *House v. Cannon Mills Co.*, 713 F.Supp. 159, 159 (M.D.N.C.1988). The court in *House* found that a Title VII or ADEA plaintiff could recover a monetary judgment against individual defendants. *Id.* The Seventh Circuit has cited the *House* decision favorably and indicated that the agent could be liable either along with or possibly instead of the employer in an ADEA case. *Shager v. Upjohn Co.*, 913 F.2d 398, 404 (7th Cir.1990).

Based on the plain language of the statute, as well as guidance from Seventh Circuit ADEA decisions and the law of agency, this Court finds that individual employees may be held liable under Title VII. Accordingly, the Motions to Dismiss of Defendants Cutting, Langley, Scoby, Jay, and Eberly must be denied.

### CONCLUSION

For the foregoing reasons, this Court adopts the Report and Recommendation of Magistrate Judge Kauffman. Accordingly, the Defendants' Motions to Dismiss (# 17, 21, 23) are DENIED. The Defendants are hereby ordered to answer the Complaint within 21 days.