**Frank DANDRIDGE, Plaintiff,**

v.

**CHROMCRAFT CORPORATION and David Woolever, Individually and as Agent of Chromcraft Corporation, Defendants.**

Civil A. No. 2:95CV26–D–B.

United States District Court,
N.D. Mississippi,
Delta Division.

Jan. 24, 1996.

---

**1.** Apparently, Phoenix Windwalker's name was at one time Corine D. Carruthers.

Louis H. Watson, Jr., Southaven, MS, for Plaintiff.

Bart Sisk, Kenneth P. Jones, Memphis, Tennessee, for Defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Presently before the court is the motion of the defendants for the entry of summary judgment in their behalf. Finding the motion partially well taken, the same shall be granted in part and denied in part.

## FACTUAL SUMMARY

### I. GENERALLY

The defendant Chromcraft Corporation initially hired the plaintiff Frank Dandridge as a janitor for its facility in Senatobia, Mississippi, on or about August 27, 1984. On September 15, 1986, the plaintiff was transferred to the position of plater rack mechanic, another position within the maintenance department. In this position, the plaintiff's direct supervisor was the defendant David Woolever.

Joe Lusk was hired by Chromcraft as a welder on March 17, 1983. His welder position was one outside of the maintenance de-

partment, and Mr. Lusk worked in this position until November 11, 1987. On that date, Mr. Lusk was transferred to the maintenance department as a plater rack mechanic. Prior to this transfer, the plaintiff was the only plater rack mechanic in the maintenance department. Mr. Lusk became the second rack mechanic in the department and the plaintiff trained him for this position.

On July 11, 1994, the defendant Chromcraft transferred the plaintiff from his position as plater rack mechanic to a position in the upholstery department. As a result of this transfer, the plaintiff's salary dropped from the hourly rate of $8.72 to $6.86. Dandridge then terminated his employment with Chromcraft and subsequently obtained other employment.

Dandridge filed this action against the defendants on February 21, 1995, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 as well as state law causes of action for the intentional infliction of emotional distress, breach of his employment contract with Chromcraft and breach of an implied covenant of good faith and fair dealing. The defendants have filed a motion for the entry of summary judgment, and this court now comes to consider it.

## II. CHROMCRAFT'S SENIORITY SYSTEM

Chromcraft publishes and distributes to its employees in the Senatobia facility an employee handbook, which contains the following language:

### SENIORITY

Your length of continuous service is recognized through a seniority policy. Seniority is a means of measuring your length of service compared to the service of other employees with whom you work. Your Seniority date is referred to in determining your job rights in case of a reduction in force, and to determine your eligibility for certain benefits.

### TYPES OF SENIORITY

1. PLANT SENIORITY is the total number of time of continuous company service from your most recent hire date. This determines your vacation pay and retirement pay, and generally doesn't determine job privileges.

2. DEPARTMENT SENIORITY is the amount of time you have been working in a department of the plant and is determined by the date you begin working in a department. Usually departmental seniority will govern your job privileges.

3. JOB SENIORITY is the amount of time an employee has been on a particular job. It is only used to govern job privileges in cases of skilled jobs or where the nature of the work and the training involved make it difficult to obtain qualified employees.

### LAYOFFS

We have a long history of steady employment, and layoff is seldom used, but in the event of a layoff the seniority rules will determine the employee laid off. Your Supervisor can explain, on request, how seniority would effect you, should there be a layoff. . . .

．　．　．　．　．

### TRANSFERS

To protect your seniority, in the event of a transfer within the plant, the Company has two rules concerning transfers:

1. Temporary transfers: Employees temporarily reassigned to other departments will continue to accumulate seniority in their own department. If employees are on a temporary transfer and are not returned to their own department within one year, they will be regarded as a permanent transfer.

2. Permanent transfer: Employees transferred to another department, will, in the new department, be credited with 75% of the Departmental Seniority held in the old department.

Chromcraft Furniture Employee Handbook, Senatobia Plant, Exhibit "A" to the Plaintiff's Complaint.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

 Summary judgment is appropriate "if the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj,* 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Matagorda County v. Russell Law,* 19 F.3d 215, 217 (5th Cir.1994).

## II. TITLE VII CLAIMS

### A. LIABILITY OF CHROMCRAFT CORPORATION

#### 1. THE PRIMA FACIE CASE

■ Section 703(a)(1) of Title VII provides in relevant part: "It shall be an unlawful employment practice for an employer—(1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a). The ultimate question in an asserted case of racial discrimination under Title VII is whether the plaintiff's race was a factor in an adverse employment decision against him. *Rhodes v. Guiberson Oil Tools,* 39 F.3d 537, 544 (5th Cir.1994) ("A claim under Title VII ... cannot 'succeed unless the employees' protected trait actually

played a role in that process and had a determinative influence on the outcome.' ").

■ However, given that many employment discrimination cases involve elusive factual questions, the Supreme Court has devised an evidentiary procedure that allocates the burden of production and establishes an orderly burden of proof. This standard for a prima facie case is utilized in determining the merits of motions for summary judgment. In a claim of race discrimination brought under Title VII, the evidentiary procedure to be utilized was originally introduced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and more recently reaffirmed in *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under *McDonnell Douglas,* the plaintiff has the initial burden of proving a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. at 1824. If the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the discharge." *Flanagan v. Aaron E. Henry Community Health Serv. Ctr.,* 876 F.2d 1231, 1233–34 (5th Cir.1989); *Whiting v. Jackson State Univ.,* 616 F.2d 116, 121 (5th Cir.1980). The employer need not prove the absence of a discriminatory motive. *Whiting,* 616 F.2d at 121. Once the employer articulates its nondiscriminatory reason, the burden is again on the plaintiff to prove that the articulated legitimate reason was a mere pretext for a discriminatory decision. *Id.* Ultimately, the burden of persuasion rests on the plaintiff, who must establish the statutory violation by a preponderance of the evidence. *Id.* (citing *Jepsen v. Florida Bd. of Regents,* 610 F.2d 1379, 1382 (5th Cir.1980)). Even if the plaintiff succeeds in revealing the defendant's reasons for terminating him were false, he still bears the ultimate responsibility of proving the real reason was unlawful "intentional discrimination." *See St. Mary's,* at ——, 113 S.Ct. at 2753, 125 L.Ed.2d at 424 ("It is not enough to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination.").

At the summary judgment stage, plaintiff need not present a prima facie case of discrimination, but must simply raise a genuine issue of material fact as to the existence of a prima facie case. *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 641 n. 8 (5th Cir.1985). In order to demonstrate a prima facie case of discrimination under a theory of disparate treatment, the plaintiff must show that:

1) he was a member of a protected class;

2) he was qualified for the position that he held;

3) he suffered an adverse employment decision; and

4) the plaintiff's employer replaced him with a person who is not a member of the protected class, or in cases where the employer does not intend to replace the plaintiff, the employer retains others in similar positions who are not members of the protected class.

*Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir.1995); *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir.1992); *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 642 (5th Cir.1985) (citing *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981)), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). The defendants in the case at bar do not argue that the plaintiff cannot present proof tending to establish each of these elements.[1] Further, based upon the proof as presently before the court, the plaintiff appears fully capable of presenting evidence on each of these requirements at trial.

The arguments presented by the defendants are more directed toward their asserted "legitimate, nondiscriminatory reason" for the demotion, and the plaintiff's ability to provide evidence on the ultimate issue of discrimination. Particularly, the defendants point to Chromcraft's company policy. It is the contention of the defendants that pursuant to company seniority policy, the plaintiff was demoted because he was the least senior member of the department in which he worked. The defendants assert that it is the general policy of Chromcraft that "department seniority" will control the decision of which employee is fired or demoted in the event of position elimination. Once a decision was made by the company to eliminate one of the two "plater rack mechanic" positions, the defendants continue, application of Chromcraft's seniority policy mandated that the plaintiff's position be subject to elimination. It is the opinion of this court that the defendants have met their burden to articulate a nondiscriminatory reason for their actions.

## 2. THE QUESTION OF DISCRIMINATION

Once the defendants offer a legitimate nondiscriminatory reason for the employment action, as they have done here, the presumption of discrimination created by the plaintiff's prima facie case "simply drops out of the picture" and the ultimate question returns to discrimination *vel non*. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995). The court must now determine if the plaintiff can come forward with sufficient proof that the offered explanation is merely a pretext for discrimination. Pretext may be shown by demonstrating that "the reason proffered is unworthy of credence, or that the employer's decision was more likely motivated by discriminatory reasons." *Valdez*, 974 F.2d at 596 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).

The plaintiff contends that when he was initially demoted, the offered reason was different from the one asserted here before the court:

I asked them why they were doing this to me and they first alleged that "work had caught up" and that Lusk had health problems. . . . I asked Ken Winters "why me" when I had more job seniority than Joe Lusk. Winters alleged that his decision

---

1. The defendants do in fact state in their submissions to the court that the "Plaintiff ... is unable to present a prima facie case of discrimination based upon race." Defendants' Memorandum In Support of Motion for Summary Judgment, p. 11. However, the defendants do not offer any argument or evidence as to how the plaintiff is unable to establish the four requisite elements.

was based on his understanding that "Joe Lusk was under doctor['s] care and that was his decision."

Exhibit "A" to Plaintiff's Response to Defendants' Motion for Summary Judgment, Affidavit of Frank Dandridge ¶ 13, 14. As well, with regard to the reason now asserted by the defendants, the plaintiff contends that he was a "skilled" employee as classified under company policy. Some "skilled" positions within the company measure seniority by time spent in that position, and not by looking to time spent within a given department. As the "plater rack mechanic" with the most job seniority, the plaintiff asserts, he should have been retained in that position. There appears to be substantial conflict between the parties as to the "skilled" status of the plaintiff's position in the context of Chromcraft's employment policies. This particular question is important not only for the plaintiff's Title VII claim[2], but also to his state law contract claims discussed below. In any event, the plaintiff has produced enough evidence to survive summary judgment on the matter of pretext. The "change of story" evidence alone is certainly enough to create a question of fact as to the credibility of the defendant's proffered reason. However, as the defendants correctly point out and as the court has already discussed, the mere showing of pretext does not end this court's analysis. *Deaver v. Texas Commerce Bank,* 886 F.Supp. 578, 583 (E.D.Tex.1995).

■■■ The plaintiff must still produce evidence that his race was a "determinative influence" in the defendants' decision to demote him. "The plaintiff is left with the ultimate burden, which has never left him: that of proving that the defendant intentionally discriminated against him." *Moham v. Steego Corp.,* 3 F.3d 873, 875 (5th Cir.1993). The plaintiff appears unable to provide much evidence in this regard, save instances of past preferential treatment of white employees by his supervisor David Woolever. Such evidence may indeed be admissible to show intent on the part of the defendants in this cause, but the undersigned is not certain that

this evidence will be sufficient to support a verdict in the plaintiff's favor.

Regardless, this court is of the opinion that the plaintiff should be allowed the opportunity to present evidence in support of his claims at trial. The defendants are not entitled to a judgment as a matter of law, and their motion for summary judgment shall be denied on this claim.

### B. LIABILITY OF DAVID WOOLEVER

■■■ Only "employers" can be held liable under the provisions of Title VII. *Garcia v. Elf Atochem North America,* 28 F.3d 446, 450 (5th Cir.1994); *Grant v. Lone Star Co.,* 21 F.3d 649, 651 (5th Cir.1994). An "employer" within this context is "a person engaged in an industry affecting commerce ... *and any agent of such a person.*" *Garcia,* 28 F.3d at 451 (citing 42 U.S.C. § 2000e(b)) (emphasis in original). The Fifth Circuit has given a liberal interpretation to the term "any agent," and has held that the phrase encompasses immediate supervisors when those individuals are endowed with the traditional rights of the employer, such as the right to hire and fire the employee. *Garcia,* 28 F.3d at 451; *Harvey v. Blake,* 913 F.2d 226, 227 (5th Cir.1990); *Humphreys v. Medical Towers, Ltd.,* 893 F.Supp. 672, 688 (S.D.Tex.1995). The actions of "mere co-workers," however, will not create liability under Title VII. *Garcia,* 28 F.3d at 451; *Harvey,* 913 F.2d at 228.

■■■ Further, the liability of an individual who constitutes an "employer" in this context can only be imposed when that person acts in his official capacity. *Harvey,* 913 F.2d at 228; *Humphreys,* 893 F.Supp. at 688. The entire purpose of the "agent" provision of Title VII was to incorporate the principles of *respondeat superior* into the statutory framework. *Grant,* 21 F.3d at 652. In light of this, it is now established within the Fifth Circuit that supervisors who work for private employers cannot be held individually liable

---

**2.** The plaintiff also asserts in his submissions to the court that the defendants' classification of his position as one dependent upon "departmental seniority" is also an act of discrimination. He argues that the defendants did so in order that he might be fired "legitimately" under Chromcraft policy. The plaintiff has, however, failed to produce evidence in support of this contention.

under Title VII. *Garcia*, 28 F.3d at 451 n. 2; *Grant*, 21 F.3d at 652–53. Other circuits have reached the same conclusion. *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.1994); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583 (9th Cir.1993); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991).

Despite this authority, the plaintiff seeks to impose individual Title VII liability against the defendant David Woolever. It is the plaintiff's position that since the passage of the Civil Rights Act of 1991, the reasoning underlying the *Grant* decision and its progeny should be reexamined. "[T]he 1991 Amendments to the Civil Rights Act expanded the available remedies to include compensatory damages and punitive damages, which can be imposed against individual defendants." *Griffith v. Keystone Steel & Wire Co.*, 858 F.Supp. 802, 805 (C.D.Ill.1994). The court in *Griffith*, without a case on point from the Seventh Circuit, determined that the proper result would be to allow individual liability against supervisory employees under Title VII. In support of this conclusion, that court relied upon the language of Title VII, prior Seventh Circuit decisions and general principles of agency—in addition to the 1991 amendments to the Civil Rights Act. *Griffith*, 858 F.Supp. at 806. However, other district courts within the Seventh Circuit are in agreement with the Fifth Circuit's *Grant* decision on this matter. *Gastineau v. Fleet Mortg. Corp.*, 884 F.Supp. 310, 312 (S.D.Ind. 1994); *Pacourek v. Inland Steel Co.*, 858 F.Supp. 1393 (N.D.Ill.1994); *Johnson v. Northern Ind. Pub. Serv. Co.*, 844 F.Supp. 466 (N.D.Ind.1994). Nonetheless, the undersigned is cognizant of a split among the circuits on this issue, for in addition to *Griffith*, at least one circuit court and several district courts allow individual liability to attach to privately employed supervisors. *See, e.g., Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir.1986); *Bishop v. Okidata, Inc.*, 864 F.Supp. 416, 423 (D.N.J.1994) (employing *Griffith* rationale in ADA case).

Regardless of how sister courts around the country view this issue, the concern of this court is the controlling authority of the Fifth Circuit. The Fifth Circuit law is clear—supervisors cannot be held personally liable under Title VII. There is no disparity among the district courts within the Fifth Circuit. *E.g., McCray v. DPC Indus., Inc.*, 875 F.Supp. 384, 392 (E.D.Tex.1995); *Galbreth v. Bellsouth Telecommunications, Inc.*, 896 F.Supp. 631, 633 (E.D.La.1995); *Humphreys*, 893 F.Supp. at 688. Sister courts within this circuit recognize that a district court is bound by the doctrine of *stare decisis* to follow decisions of the Fifth Circuit in the absence of special justification. *Kozam v. Emerson Elec. Co.*, 739 F.Supp. 307, 309 (N.D.Miss.1990). The undersigned finds no special justification in this case. The limitation on recoverable damages in the pre–1991 Civil Rights Act was only one justification for *Grant's* refusal to allow the imposition of liability against supervisors in their individual capacity, and all of the remaining rationales are still viable. *Zatarain v. WDSU–Television, Inc.*, 881 F.Supp. 240, 245 (W.D.La.1995). The plaintiff's Title VII claims against the defendant David Woolever in his individual capacity shall be dismissed.

## III. STATE LAW CLAIMS

### A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In the seminal case of *Sears, Roebuck & Co. v. Devers*, the Mississippi Supreme Court pronounced the standard of law for a claim of intentional infliction of emotional distress:

> Where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally—or even unintentionally yet the results being reasonably foreseeable—Courts can in certain circumstances comfortably assess damages for mental and emotional distress, even though there has been no physical injury. In such instances, it is the nature of the act itself—as opposed to the seriousness of its consequences—which gives impetus to legal redress.

*Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 900 (Miss.1981). This standard still prevails in Mississippi today. *See Leaf River Forest Prods. v. Ferguson*, 662 So.2d 648, 658 (Miss.1995) (citing *Sears*); *Peoples Bank & Trust Co. v. Cermack*, 658 So.2d 1352, 1365 (Miss.1995) (same). In essence, the plaintiff

must generally demonstrate that the defendants committed wanton and willful conduct which would cause outrage or revulsion. *Peoples Bank,* 658 So.2d at 1366. It is important to note that the conduct itself must be "extreme and outrageous."

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Burroughs v. FFP Operating Partners, L.P.,* 28 F.3d 543, 546 (5th Cir.1994) (citing *White v. Walker,* 950 F.2d 972, 978 (5th Cir.1991)).

Other states which apply this tort similarly note that "[r]ecognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *White v. Monsanto Co.,* 585 So.2d 1205, 1210 (La.1991); *see, e.g., Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 654–55 (5th Cir.1994) ("Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress"; court found sexually explicit and vulgar harassment of female employee which occurred on *daily* basis to be extreme and outrageous).

 In the case at bar, it is the opinion of this court that the plaintiff has not demonstrated conduct sufficient to justify a finding by a reasonable juror that the defendants' acts were so extreme and outrageous so as to meet the strict grounds for relief under this tort. The plaintiff may have indeed submit-

ted sufficient proof that the acts of the defendants were racially motivated, but motivation is not the core issue on this claim. Rather, the focus is the outrageous nature of the acts themselves. The court acknowledges that the plaintiff has put forth proof of numerous racially-motivated encounters with his immediate supervisor, the defendant David Woolever. While repetitive racially-motivated harassment can most certainly serve as the foundation for a claim of intentional infliction of emotional distress, this is not a case where the conduct of the defendants is "so outrageous in character, and so extreme in degree" as to constitute a claim. There is no genuine issue of material fact as to this claim of the plaintiff, and the defendants are entitled to a judgment as a matter of law.

## B. BREACH OF CONTRACT

 Under Mississippi law, if an employer issues a manual to its employees which sets forth provisions to be followed in "reprimanding, suspending, and discharging an employee,"[3] then the employer is obligated to follow any such provisions. *Nichols v. City of Jackson,* 848 F.Supp. 718, 724 (S.D.Miss.1994) (citing *Bobbitt v. Orchard, Ltd.,* 603 So.2d 356, 357 (Miss. 1992)); *McDaniel v. Miss. Baptist Medical Ctr.,* 869 F.Supp. 445, 453 (S.D.Miss.1994) (same); *Coleman v. Chevron Pascagoula Fed. Credit Union,* 616 So.2d 310, 311 (Miss.1993) (same). This obligation is not absolute, however, and may be modified or obviated by subsequent changes in policy provisions. *Nichols,* 848 F.Supp. at 724 ("[T]he employer has a duty to follow the provisions of a manual only so long as a reasonable employee would believe it to still be current."). Further, the employer may avoid the creation of any such obligation by explicitly preserving in the policy itself the "at-will" nature of all the facets of the employment relationship.[4] *McDaniel,* 869 F.Supp. at 453 (citing *Bobbitt,* 603 So.2d at 357).

---

**3.** It is the opinion of this court that this obligation would encompass the action of a demotion, which is more drastic than a reprimand but less drastic than a discharge.

**4.** The defendant does not dispute in this case that the language of Chromcraft's employee handbook contains no such express reservation.

Mr. Dandridge charges that in the instant case he was demoted in violation of company policy, and that such demotion constitutes a breach of Chromcraft's obligation to adhere to its seniority policy. As has already been discussed briefly by the court, Chromcraft essentially utilizes a dual-tier seniority policy to be used when determining which employees are to be terminated or demoted. Whether a particular employee will be fired/demoted in the wake of restructuring or downsizing is determined by whether that particular position's seniority is measured either by time spent in that particular job *or* by time spent in that particular department. "Skilled" employees generally have seniority measured by time spent on the particular job, while most other employees have seniority measured by time within their given department. The plaintiff charges that he was a "skilled" employee within the meaning of company policy, and that as the plater rack mechanic with the most "job seniority," Mr. Lusk should have been demoted before the plaintiff. The defendants counter that the position of "plater rack mechanic" is not a "skilled" one and that pursuant to company policy, Mr. Lusk should have been retained as the employee with the most "departmental seniority."

The defendants submit that the position of "plater rack mechanic" has been classified by Chromcraft as a "departmental seniority" position since at least March 1, 1988. In support of this contention, they present to the court the affidavit of Ken Thomson, Director of Employee Relations for Chromcraft. In conjunction with Mr. Thompson's affidavit, the defendants present a document entitled "Seniority Policy Attachment A," which lists various positions within Chromcraft's Maintenance Department and whether seniority of those particular positions is determined by job or by department. "Plater Rack Mechanic" is listed on this document as a departmental seniority position. In response, the plaintiff states that "Mr. Dandridge's position of rack mechanic was a skilled position," and that the "Defendants never informed Mr. Dandridge to the contrary. In fact, Mr. Dandridge attended special training classes to better his education and skills."

Initially, the undersigned notes that the Employee Handbook itself does not define "skilled" positions as that term is used in Chromcraft's seniority policy nor does it delineate what positions are to be considered "skilled." As well, this court has not been informed whether "Attachment A" to the seniority policy was actually attached to the copy of the Employee Handbook that Mr. Dandridge received when he was hired or was otherwise made available to him. The obligation of Chromcraft to follow its own procedures as outlined in its employee handbook is a contractual one. What constitutes a "skilled" employee is therefore subject to contractual interpretation, and this court cannot at this stage determine its meaning. There exist genuine issues of material fact as to this claim, and the defendants are not entitled to a judgment as a matter of law.

## C. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The Mississippi Supreme Court has previously determined that at-will employment relationships are not governed by a "covenant of good faith and fair dealing" which gives rise to any quasi-tort cause of action for wrongful termination. *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 547 (5th Cir.1994); *Hartle v. Packard Elec.*, 626 So.2d 106, 110 (Miss.1993), *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1089 (Miss.1987). Based upon this authority, the defendants seek summary judgment on this claim of the plaintiff. The plaintiff does not distinguish these cases, and only offers the conclusory statement that "[b]reach of the contract between the parties also constitutes breach of the implied covenant of good faith and fair dealing between the parties," and directs this court to the decision of *Empiregas, Inc. of Kosciusko v. Bain*, 599 So.2d 971, 974–77 (Miss.1992). The Mississippi Supreme Court determined in *Empiregas* that an employer who terminated its employee in bad faith was properly precluded by the dictates of equity from enforcing a non-competition agreement against that former employee. *Empiregas*, 599 So.2d at 974–77. The undersigned is not aware of any non-competition agreement in the case at bar, and is

likewise unaware of how the *Empiregas* decision affects the validity of the cases cited by the defendants. This plaintiff has no separate cause of action arising under state law for breach of the duty of good faith and fair dealing in the context of an at-will employment contract. There is no genuine issue of material fact as to this matter and the defendants are entitled to a judgment as a matter of law on this claim.

### CONCLUSION

The plaintiff cannot hold the defendant David Woolever individually liable under Title VII for race discrimination. As well, the plaintiff has failed to demonstrate that the actions of the defendants were sufficiently "extreme and outrageous" to constitute a cause of action for intentional infliction of emotional distress. Further, the plaintiff has no cause of action under Mississippi law for breach of good faith and fair dealing with regard to an at-will employment contract. As to the remaining claims of the plaintiff, there exist genuine issues of material fact and the defendants are not entitled to a judgment as a matter of law.

In any event, this court has the discretion, which it exercises here, to allow the plaintiff's claims to proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("Neither do we suggest ... that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."); *Rodeway Inns Intern. v. Amar Enterp.*, 742 F.Supp. 365, 369 n. 5 (S.D.Miss. 1990) ("[A] district court may, in its discretion, deny the motion [for summary judgment] in order to give the parties the chance to fully develop the facts at trial."). The motion of the defendants for the entry of summary judgment in their favor shall be granted in part and denied in part.

A separate order in accordance with this opinion shall issue this day.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to a memorandum opinion issued this day, it is hereby ORDERED THAT:

1) the motion of the defendants for the entry of summary judgment is GRANTED as to the plaintiff's claims of discrimination under Title VII against the defendant David Woolever in his individual capacity. Those claims of the plaintiff are hereby DISMISSED.

2) the motion of the defendants for the entry of summary judgment is GRANTED as to the plaintiff's claims for the intentional infliction of emotional distress. Those claims of the plaintiff are hereby DISMISSED.

3) the motion of the defendants for the entry of summary judgment is GRANTED as to the plaintiff's claims against the defendants for "breach of the duty of good faith and fair dealing." Those claims of the plaintiff are hereby DISMISSED.

4) As to the remainder of the plaintiff's claims, the motion of the defendants is DENIED.

SO ORDERED.