**Russell L. McDANIEL, Plaintiff,**

v.

**MISSISSIPPI BAPTIST MEDICAL CENTER, Defendant.**

Civ. A. No. 3:93–CV–604(B)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 29, 1994.

Lindsay C. Patterson, Ott, Purdy & Scott, Jackson, MS, for plaintiff.

Walter J. Brand, Kenneth E. Milam, Watkins & Eager, Jackson, MS, for defendant.

## OPINION AND ORDER

BARBOUR, Chief Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Russell L. McDaniel and Defendant Mississippi Baptist Medical Center have filed cross Motions for Summary Judgment [122 and 124]. Having considered the Motions, the responses, the supporting and opposing memoranda and the submitted exhibits, the Court rules that summary judgment requested by Defendant on that portion of Plaintiff's employment discrimination claim dealing with back pay is denied. The Court, however, grants partial summary judgment in favor of Defendant on any remedy that Plaintiff may have for reinstatement or future pay. The Court also grants summary judgment in favor of Defendant on Plaintiff's state law claims for breach of contract, wrongful discharge and breach of the implied covenant of good faith and fair dealing. The Court denies summary judgment in favor of Defendant on Plaintiff's claims for negligent and intentional infliction

of emotional distress. Plaintiff's Motion for Summary Judgment is denied in full.

## I. BACKGROUND

In the summer of 1991, Plaintiff was hired by Defendant as an Adolescent Marketing Representative for the Chemical Dependency Center ("CDC") of Defendant. By the summer of 1992, Plaintiff was able to admit to himself that chemical dependency problems for which he had previously received treatment were in relapse. Plaintiff realized that he had developed a problem with abusing and wanting to abuse various opium-based medications prescribed for him by various doctors from whom he had received treatment and care. According to the record, Plaintiff's last ingestion of drugs occurred in the early part of August of 1992.

In the latter part of August, Plaintiff sought treatment. On September 1, 1992, Plaintiff checked into the Friary, Inc. ("the Friary"), a chemical dependency program located in Gulf Breeze, Florida. He was released from this program on September 19, 1992.

In the course of deciding what to do about his drug abuse problem and before he had formally been admitted into the Friary program, Plaintiff informed various supervisors and co-workers at the CDC of his problem. The response of Defendant was to terminate him from his position. Defendant contends that its termination of Plaintiff was due to the fact that Plaintiff's drug addiction relapse violated an official policy of Defendant requiring sobriety from its CDC employees. Plaintiff disputes this assertion. It is also not clear exactly when Plaintiff's termination occurred. Defendant asserts that Plaintiff was terminated at or near the time it first learned of Plaintiff's addiction. Plaintiff contends that his termination occurred either during the course of his treatment at the Friary or after he was released from the Friary and reported back to work at the CDC.

On September 24, 1993, Plaintiff filed suit against Defendant. Plaintiff asserts that his termination from his marketing position at the CDC in response to his chemical dependency problem was a violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Plaintiff also asserts state law claims based upon emotional distress, wrongful termination and breach of the implied covenant of good faith and fair dealing.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. at 2552–53. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. DISCUSSION

### a) Is Plaintiff Covered By The ADA?

The ADA protects "qualified individuals with a disability" from discrimination in certain employment situations. 42 U.S.C. § 12111(8). However, § 12114(a) provides that "the term 'qualified individual with a disability' shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." Seizing upon this provision, Defendant argues that evidence acquired during the discovery process in this litigation proves that Plaintiff was engaging in such illegal drug use and that Plaintiff is therefore not covered by the ADA. Specifically, Defendant points to certain statements found in Plaintiff's medical records from his Friary treatment which seem to show that Plaintiff admitted that, prior to his decision to get treatment for his drug problem, he would exaggerate certain physical maladies in an attempt to get his treating physicians to prescribe pain medication to him. *See* Friary Medical Records, Ex. 2 to Carpenter Dep., identified as Def.'s Ex. C in Supp. of Mot. for Summ.J. at 1, 40, 50–53, 64–67. Defendant argues that this shows that Plaintiff was engaged in the "illegal use of drugs" for the purposes of the ADA exclusion from coverage found in § 12114(a).

Title 42 U.S.C. § 12111(6) defines "illegal use of drugs" as:

[T]he use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act (21 U.S.C. 812). Such term does not include the use of a drug taken under the supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.

In addition, 21 U.S.C. § 843(a)(3) of the Controlled Substances Act states that "It shall be unlawful for any person knowingly or intentionally ... to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge."

■ It is undisputed that the drugs that Plaintiff was abusing qualified as controlled substances. It is also undisputed that the drugs he took were prescribed by his physicians. Thus, a question arises as to whether, in the context of the present case, the second sentence of 42 U.S.C. § 12111(6) takes precedence over the first sentence of § 12111(6) acting in conjunction with 21 U.S.C. § 843(a)(3). The Court rules that when Congress enacted 42 U.S.C. § 12111(6) it in no way intended to abrogate the effect of 21 U.S.C. § 843(a)(3). Thus, even though a person may be taking drugs pursuant to a physician's or other health care professional's supervision, if misrepresentation or deceit is involved in obtaining such drugs, that person has violated 21 U.S.C. § 842(a)(3). Put another way, that person has engaged in the illegal use of drugs for purposes of the ADA.

■ Within the context of the present case, the comments found in the Friary medical records—admissible under either Rule 801(d)(2)(A) or Rule 803(4) of the Federal Rules of Evidence—clearly indicate that Plaintiff misrepresented the nature of his medical problems in an effort to get his attending physicians to prescribe medications for him. Moreover, Plaintiff offers no contradictory evidence which would rebut this conclusion. Applying its previous ruling, the Court finds that Plaintiff engaged in the illegal use of drugs when he lied to his various attending physicians about the true nature of his symptoms.

■ However, this finding does not dispose of the issue of whether Plaintiff was covered by the ADA. The Court is of the

opinion that, notwithstanding this finding, a triable issue of fact still exists as to whether Plaintiff indeed fell under the coverage of the ADA.

■ While § 12114(a) excludes certain individuals who engage in illegal drug use from the protection of its provisions, subsection (b) explicitly qualifies the scope of the exclusion found in subsection (a):

> Nothing in subsection (a) of this section shall be construed to exclude as a qualified individual with a disability an individual who—
>
> (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated
>
> (2) is participating in a supervised rehabilitation program and is no longer engaging in such use;
>
> . . . .

In effect, subsection (b) provides a "safe harbor" from the exclusion found in subsection (a). Put another way, the provisions of subsection (b) restore the ADA protection which subsection (a) takes away. Thus, once a substance abuser stops engaging in his illegal use and either (1) begins participating in a drug rehabilitation program or (2) actually successfully completes such a program or has otherwise been rehabilitated, he once again becomes a "qualified individual" for ADA purposes.

After examining the record, the Court finds that genuine issues of material fact exist as to when exactly Plaintiff was terminated from his employment with Defendant. There is evidence in the record from which a jury could find that, at the time that he was terminated, Plaintiff was either undergoing treatment at the Friary or had already completed such treatment. There is also evidence in the record from which a jury could find that from the time just before he entered the Friary program, Plaintiff had ceased engaging in his illegal drug use. Put succinctly, it may be possible for a jury to find that at the time that Plaintiff was terminated, he met the requirements of either § 12114(b)(1) or § 12114(b)(2) and therefore

qualified as a "qualified individual with a disability" for the purposes of ADA coverage.

Nor is this ruling undermined, as Defendant would have the Court conclude, by the following excerpt from the Equal Employment Opportunity Commission's *Technical Assistance Manual* (Title I) on the Americans with Disabilities Act (January 26, 1992):

> An applicant or an employee who tests positive for an illegal drug cannot immediately enter a drug rehabilitation program and seek to avoid the possibility of discipline or termination by claiming that s/he is now in rehabilitation and is no longer using drugs illegally.

*Id.* § 8.3. While it is not quite clear what legal weight the Court should give the Manual, the Court is of the opinion that the preceding passage is inapposite to the facts of the present case. Nowhere in the record is there any suggestion that Plaintiff entered the Friary program in an attempt to avoid disciplinary or termination procedures which were imminent in view of discovery or suspicion of his drug problem by Defendant. Rather, the record clearly points to an employment situation wherein Plaintiff was viewed by his supervisors as doing his job well and that his drug problem would not have come to light had he not come forth voluntarily and disclosed it to the CDC personnel. Thus, the text quoted by Defendant from the Manual contemplates a situation different from the one at hand. Summary judgment in favor of either party is thus denied with respect to the issue of ADA coverage.

b) The Existence of a Sobriety Policy As Providing An Affirmative Defense

■ Defendant asserts that it fired Plaintiff because his chemical dependency relapse violated its sobriety policy. Defendant further contends that pursuant to 42 U.S.C. § 12113(a), the existence of this sobriety policy affords it an affirmative defense to any charge of discrimination in terminating Plaintiff on account of his admission that he had a drug problem.

Title 42 U.S.C. § 12113(a) states:

> It may be a defense to a charge of discrimination under this chapter that an

alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

In order for this provision to shield Defendant from liability, Defendant must carry its burden of proof with respect to three factors in § 12113(a): (1) its sobriety policy is job-related, (2) its sobriety policy is consistent with business necessity and (3) Plaintiff's job as marketer cannot be accomplished by reasonable accommodation to his disability.[1] Because genuine issues of material fact exist with regard to the second and third factors, summary judgment in favor of Defendant on the basis of this affirmative defense is denied. In addition, in view of its ruling that an issue of material fact exists with respect to the third factor, partial summary judgment in favor of Plaintiff on this aspect of the affirmative defense asserted by Defendant is also denied.

c) The Doctrine of After–Acquired Evidence

 As another ground upon which Defendant contends summary judgment should be granted in its favor, Defendant asserts the doctrine of after-acquired evidence. This doctrine provides that irrespective of the fact that the employer may have actually discriminated against the employee in carrying out its adverse employment decision, where, during the course of an employment discrimination suit, the employer discovers evidence of misconduct or fraud on the part of the employee which would have enabled the employer, had it known of it, to either refuse to hire the employee at the outset of the employment relationship or to later terminate the employee once the employment relationship existed, the employer is either entitled to be relieved of liability or the employer is entitled to have the remedies available to the employee limited. Within the context of the present case, Defendant argues that evidence from the Friary medical records which was uncovered during discovery shows that Plaintiff was suffering from a substance abuse relapse both at the time he initially applied for his job at the CDC and throughout the duration of his employment there. Defendant argues that, pursuant to its sobriety policy, had it known that Defendant was in relapse, it never would have hired him in the first place or it would have terminated him earlier. Defendant relies upon those federal decisions which hold that the after acquired evidence doctrine is a complete bar to employer liability in support of its contention that Plaintiff's ADA claim should be dismissed.

To date, the doctrine of after acquired evidence as applied in the employment discrimination context has provoked not a small amount of discussion. So far, at least six United States Circuit Courts of Appeal have authoritatively addressed the issue. These are the Third, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits. There is a substantial divergence among them as to the various approaches to be used in applying the doctrine. Indeed, the issue is currently before the United States Supreme Court in *McKennon v. Nashville Banner Publishing Co.*, 9 F.3d 539 (6th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994). The Court of Appeals for the Fifth Circuit, however, has not yet addressed the issue. Nevertheless, since the issue is currently before this Court, the Court must make its own decision as to the approach it will apply.

 The Court need not engage in a lengthy discussion of the various approaches. This has already been done in numerous federal opinions. Nevertheless, after reviewing the applicable authorities, the Court is of the opinion that the discussion of the issue

1. 42 U.S.C. § 12111(8) states in pertinent part:
The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

and the approach adopted in the excellent and highly persuasive district court opinion *Massey v. Trump's Castle Hotel & Casino,* 828 F.Supp. 314 (D.N.J.1993), is the most reasonable and most consistent protector of the policies expressed in the civil rights statutes.[2] In *Massey,* after discussing at length the various approaches to after acquired evidence which had been applied by the various circuits which had addressed the issue to that time, the district court stated:

> [W]e hold that the following legal standard will be applied in all federal employment discrimination cases before this court involving after acquired evidence of employee misconduct. Defendants may use after acquired evidence of employee misconduct. Defendants may use after acquired evidence only to prove that the defendant would have made the same employment decision at issue in the action. Whether the defendant would not have hired the employee initially will not be relevant in cases involving alleged illegal discharges. If the defendant proves that it would have made the same decision, the remedies of front-pay and reinstatement will be barred. All other remedies, however, will remain available to the plaintiff. If back pay is awarded, it will be measured from the date of the injury to the date of the judgment unless the employer can prove that the information would have inevitably come to light independent of the employer's discriminatory conduct.

828 F.Supp. at 324.

In the present case, though genuine issues of material fact exist as to whether Defendant actually had an officially promulgated sobriety policy in place in its CDC unit, there can be no doubt that had Defendant learned of Plaintiff's relapse at an earlier time it would have terminated him. This is borne out by the fact that in the aftermath of finding out about Plaintiff's relapse, Defendant *actually did* terminate him. Moreover,

as was earlier discussed by the Court within the context of its discussion of what comprises "illegal drug use" for ADA purposes, Defendant would have been fully within its legal rights in doing so since Plaintiff was not then covered by the ADA. Applying the approach expressed in *Massey,* the Court therefore rules that Plaintiff will be barred from obtaining the remedies of either reinstatement or front pay should Plaintiff ultimately prevail in proving that his discharge violated the ADA. Thus, the Court grants partial summary judgment in favor of Defendant on these issues.

### d) Plaintiff's Claims for Breach of Employment Contract and The Implied Covenant of Good Faith and Fair Dealing

Plaintiff has asserted state law claims for breach of the employment contract (or wrongful discharge) and for breach of the implied covenant of good faith and fair dealing. While not disputing the fact that he was an employee at-will, Plaintiff asserts that the failure of Defendant to discharge him in a manner which conformed to certain policies expressed in the MBMC Employment Handbook comprised acts of wrongful termination. The Court finds, however, that these claims are without merit.

■ The MBMC Employment Handbook contains the following language:

> Each employee is reminded that his handbook is not a contract of employment, either express or implied; confers no property interest in one's job; and, since employment at MBMC is based upon mutual consent, either MBMC or the employee is privileged to terminate employment at will, without notice and without cause.... The contents of the handbook are guidelines and not a guarantee of continued benefits or employment by MBMC.

Def.'s Ex. I in Supp. of Def.'s Mot. for Summ.J. While it is true that in *Bobbitt v. The Orchard, Ltd.,* 603 So.2d 356 (Miss.1992), the Mississippi Supreme Court held that where an employer distributes an employee manual containing disciplinary policies and

---

**2.** This decision is buttressed by the Fifth Circuit opinion *Goldberg v. Bama Mfg. Corp.,* 302 F.2d 152 (5th Cir.1962), a case which predated the enactment of Title VII and the various other federal civil rights acts prohibiting various types of discrimination. In *Goldberg,* the Fifth Circuit ended up using an approach concerning after acquired evidence of employee misconduct remarkably consistent with that ultimately decided on in *Massey.*

procedures to all its employees the employer is bound to follow its provisions in reprimanding, suspending or discharging an employee for violations of its policies, even in a situation where the employment relationship is one which is at-will, *Bobbitt* also expressly qualified this holding. The court held that this rule does not apply when there is "[something] in the employment contract to the contrary." *Id.* at 357. Since the language quoted from the Handbook expressly preserved the at-will nature of Plaintiff's employment relationship and preserved the right of Defendant to terminate its employees with or without cause, nothing in the Handbook gave Plaintiff a right to be disciplined or terminated in accordance with the policies expressed therein. Summary judgment in favor of Defendant on Plaintiff's breach of contract claim is therefore appropriate.

 For related reasons, the Court also finds that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must also be dismissed. The rule in Mississippi is that at-will employment relationships are not governed by an implied covenant of good faith and fair dealing. *Hartle v. Packard Elec.*, 626 So.2d 106, 110 (Miss.1993). Summary judgment in favor of Defendant on this claim is therefore also appropriate.

e) Negligent Infliction of Emotional Distress and Other Matters

 Plaintiff has asserted claims for both negligent and intentional infliction of emotional distress. In its Memorandum Brief in Support of its Motion for Summary Judgment, Defendant cites the Fifth Circuit opinion *White v. Walker*, 950 F.2d 972 (5th Cir. 1991), for the proposition that Mississippi does not recognize a theory of relief based upon negligent infliction of emotional distress. The Court has reviewed *White* and finds nothing in it to this effect. Quite to the contrary, in *Strickland v. Rossini*, 589 So.2d 1268 (Miss.1991), the Mississippi Supreme Court stated that "a plaintiff may recover for emotional injury proximately resulting from

negligent conduct, provided only that the injury was reasonably foreseeable by the defendant." *Id.* at 1275. Thus, the contention of Defendant is without merit.

 In a letter dated November 22, 1994, Plaintiff accurately points out that in its Rebuttal Memorandum to Support of Its Motion for Summary Judgment,[3] Defendant for the first time raises new and additional contentions in dealing with Plaintiff's ADA claim and his claims for negligent and intentional infliction of emotional distress. Plaintiff argues that for various reasons, the Court should not consider these contentions. The Court agrees with Plaintiff. In the interest of fairness, Defendant should not be allowed to raise new grounds for the first time in its rebuttal to which Plaintiff will not have the opportunity to provide an adequate response. And due to the fact that the pre-trial conference in this litigation is scheduled for December 1, 1994, the Court cannot at this late stage of the proceedings delay ruling on the present Motions for Summary Judgment in order to allow Plaintiff more time to brief the issues raised by Defendant. For this reason, the new arguments of Defendant will not be considered for the purposes of this Opinion and Order.

## IV. CONCLUSION

Because genuine issues of material fact exist with respect to Plaintiff's ADA claim, the Court denies summary judgment in favor of either party with respect to the issue of the liability of Defendant for back pay. However, applying the doctrine of after acquired evidence, the Court finds that any remedy that Plaintiff might have in the way of reinstatement or front pay is barred. Thus, the Court grants partial summary judgment in favor of Defendant on this aspect of Plaintiff's ADA claim. The Court also grants partial summary judgment in favor of Defendant on Plaintiff's claims for wrongful discharge, breach of contract and breach of the implied covenant of good faith and fair dealing. The Court denies summary judgment on Plaintiff's claim for negligent or intentional infliction of emotional distress,

---

3. A copy of the Rebuttal Memorandum of Defendant was received by these chambers on November 15, 1994. Prior to Plaintiff's letter, the Rebuttal of Defendant was the last briefing received by these chambers.

but without prejudice. Plaintiff's Motion for Summary Judgment is denied in full.

SO ORDERED.