Robert G. COOPER, Plaintiff,

v.

DREXEL CHEMICAL COMPANY and Marc Gilbertson, Defendants.

Civil Action No. 2:95cv092–D–B.

United States District Court,
N.D. Mississippi,
Delta Division.

April 22, 1996.

---

Lawrence J. Hakim, Charlie Baglan & Associates, Batesville, MS, for plaintiff.

Louis H. Watson, Jr., Holcomb Dunbar, Southaven, MS, for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Presently before the court is the motion of the defendants for the entry of summary judgment on their behalf. Finding the motion well taken, the same shall be granted.

### Factual Background [1]

The plaintiff Robert G. Cooper was hired by the defendant Drexel Chemical Company ("Drexel") on July 27, 1993, as a "production supervisor" for its facility in Tunica, Mississippi. Drexel engages in the production of chemicals, including fertilizer for agricultural use. Drexel hired Cooper at an annual salary of $24,000, and then trained and placed him in charge of the Tunica plant. Even though he regularly supervised multiple employees in the mill area, Cooper also worked alongside the employees he supervised whenever his crew was short handed.

Another duty assumed by Cooper was the driving of a company van to and from work at the request of his superiors. While working in Tunica, the plaintiff lived in Senatobia, Mississippi. The plaintiff agreed to drive the van to and from work, and to use that van to ferry other employees to and from the plant.

Because of his wife's pregnancy, the plaintiff requested time off from work for the birth. On a calendar in the office where shift managers met, he wrote "want time off for baby" on the date corresponding to the approximate time the baby was expected.

Upon asking his supervisor, Marc Gilbertson, more directly for this leave time and engaging in a discussion on the topic, Gilbertson told the plaintiff that he "better not take off work." The plaintiff then inquired about his job performance, and Gilbertson told him "I think you do what is expected of you."

> I said, "so if I am terminated it is going to be solely for me wanting to take off work for the baby to be born?"
>
> He said, "Yes."

Deposition of Robert Cooper, p. 61. Drexel terminated the plaintiff's employment that day, April 6, 1994. This action followed.

The plaintiff initially filed this action on June 5, 1995, in the Circuit Court of Tunica County, alleging various federal and state law causes of action against the defendants. The defendants subsequently removed the action to this court on June 27, 1995, and have now moved for the entry of summary judgment in their favor as against all of the plaintiff's claims. Finding the motion well taken, and pursuant to the reasons set forth in this memorandum opinion, the motion shall be granted.

### Discussion

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson*

---

**1.** In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. The court's factual summary is so drafted.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj*, 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Matagorda County v. Russell Law*, 19 F.3d 215, 217 (5th Cir.1994).

## II. THE PLAINTIFF'S FEDERAL LAW CLAIMS

### A. TITLE VII—THE PREGNANCY DISCRIMINATION ACT

The first claim of the plaintiff arising under federal law is that the defendants, by firing him, violated the "Pregnancy Discrimination Act," ("PDA") contained within Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e(k).

### 1) AGAINST DEFENDANT MARC GILBERTSON

■ The initial assertion of the defendants in this matter is that Marc Gilbertson, as a supervisor, cannot be held individually liable under Title VII. This court has recently discussed the matter of supervisor liability under Title VII in some detail, and concluded that even in light of the 1991 Amendments to the Civil Rights Act, "[t]he Fifth Circuit law is clear—supervisors cannot be held personally liable under Title VII." *Dandridge v. Chromcraft Corp.*, 914 F.Supp. 1396, 1402 (N.D.Miss.1996) (Davidson, J.). Therefore, as the plaintiff has no viable Title VII claim against the defendant Marc Gilbertson individually, the defendants' motion shall be granted as to that claim against him.

### 2) AGAINST DEFENDANT DREXEL CHEMICAL COMPANY

■ Discrimination under the PDA is a type of gender discrimination. *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 420 (1st Cir.1996) ("Title VII's ban on gender discrimination encompasses pregnancy-based discrimination."); 42 U.S.C. § 2000e(k) (explaining pregnancy and related medical conditions constitute "sex" for purposes of sex discrimination). The plaintiff is correct that, at least in some instances, the PDA protects males as well as females against gender discrimination. *E.g., Newport News Shipbuilding v. E.E.O.C.*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983) (holding PDA violated where pregnant female employees received greater monetary medical benefits than male employees who had pregnant spouses); *E.E.O.C. v. Vucitech*, 842 F.2d 936 (7th Cir. 1988) (applying *Newport News* retroactively). However, the PDA does not require that an employer such as Drexel provide to its employees maternity leave or parental leave to spend time with a newborn.[2] *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 738 (7th Cir. 1994) (stating PDA does not require an employer to give maternity leave "or take other steps to make it easier for pregnant women to work."); *Afande v. National Lutheran Home for the Aged*, 868 F.Supp. 795, 803 (D.Md.1994) ("Title VII does not insure fair and objective treatment by employers."); *see also* Stacy J Cooper, *Sexual Harassment and the Swedish Bikini Team: A Reevaluation of the "Hostile Environment" Doctrine*, 26 Colum. J.L. & Soc. Probs. 387, 434 n. 207 ("The Pregnancy Discrimination Act of 1978 prohibited disparate treatment, but did not require employers to provide any leave at all."). Rather, the impetus of this provision of Title VII is to "make clear that it is discriminatory to treat **pregnancy related conditions** less favorably than other medical conditions." *E.E.O.C. v. Texas Industries, Inc.*, 782 F.2d 547, 550 (5th Cir.1986) (citing

---

**2.** The Family and Medical Leave Act of 1993 does mandate that employers are to provide up to twelve (12) weeks of leave to an employee "[b]ecause of the birth of a son or daughter and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A). However, the defendant correctly notes that in order to become eligible for such leave, the employee must be one "who has been employed [sic] for at least 12 months by that employer." 29 U.S.C. § 2611(2)(A). The undisputed time span of the plaintiff's employment with Drexel (July 27, 1993 to April 6, 1994) was a little under eight months.

**1280**

*Newport News,* 462 U.S. at 684, 103 S.Ct. at 2631) (emphasis added). A "pregnancy related condition" is limited to "incapacitating medical conditions for which medical care or treatment is usual and normal." *Wallace v. Pyro Min. Co.,* 789 F.Supp. 867, 869 (W.D.Ken.1990).

As already noted, other child-related absences from work are not protected by the PDA. *E.g., Barnes v. Hewlett–Packard Co.,* 846 F.Supp. 442, 444 (D.Md.1994) ("All pertinent authorities since the inception of the PDA are in accord that Title VII does not prohibit discrimination on the basis of child-rearing activities or parental leave."); *Wallace,* 789 F.Supp. at 869 (finding no protection for additional time off for breast-feeding when otherwise medically able to return to work). Also instructive on the point is the legislative history of the PDA:

> [I]f a woman wants to stay home to take care of the child, no benefit must be paid because this is not a medically determined condition related to pregnancy.

H.R. No. 948, 95th Cong. 5, *reprinted in* U.S.Code Cong. & Admin.News, 4749, 4753.

■ The parties agree in this case that at the time of the plaintiff's termination, Drexel had no written maternity leave policy. Further, Mr. Cooper was not entitled to take any vacation time under company policy, as he had not yet completed one year of employment. Finally, there is no evidence before the court that he suffered from a medical infirmity which required his absence from work. As the PDA does not require that employers grant leave to prospective parents, Mr. Cooper has no protection under Title VII under the facts at bar. *Cooper, Sexual Harassment,* 26 Colum.J.L. & Soc. Probs. at 434 n. 207 ("For example, if an employer allowed no sick leave for first-year employees, a woman who needed to take time off to have a baby had no claim if her employer fired her—she was treated just like a male employee who took a sick leave."). In order to establish a claim, Mr. Cooper would have to demonstrate that he was treated differently than other male employees who wanted time off because of a spousal medical condition unrelated to pregnancy. Under the policies in effect at Drexel at the time of this incident, Mr. Cooper did not have any independent right to take leave time because of his wife's medical condition. Further, there is no evidence that other employees were granted any type of discretionary leave for spousal medical conditions while he was denied such. There is nothing before the court which would establish a viable claim under the PDA provision of Title VII. There is no genuine issue of material fact in this matter, and the defendants are entitled to a judgment as a matter of law on the plaintiff's Title VII claim.

## B. THE FAIR LABOR STANDARDS ACT

■ The remaining federal law claim of the plaintiff is that the defendants are responsible to him for overtime pay in roughly the amount of $7,062.48 for approximately 408 hours of overtime work. One requirement of the Fair Labor Standards Act ("FLSA") is that certain employees who work more than forty (40) hours per regular work week must be provided overtime compensation. 29 U.S.C. § 207 (Supp.1995). Excluded from this FSLA requirement are those employees working in a bona fide executive, administrative or professional capacity. *Smith v. City of Jackson,* 954 F.2d 296, 298 (5th Cir.1992); *York v. City of Wichita Falls,* 944 F.2d 236, 241 (5th Cir.1991). The Fifth Circuit has applied a three-part test to determine if an employee qualifies as a bona fide executive—the employer has the burden of showing that:

1) the employee is compensated on a salary basis of not less than $250.00 per week (the "salary test");

2) the employee is primarily responsible for management duties; and

3) the employee customarily and regularly directed the work of two or more employees (collectively the "duties test").

*York,* 944 F.2d at 241–42.[3] As noted, it is the employer who carries the burden of estab-

---

**3.** This is the "short test" as reflected in 29 C.F.R. § 541.1(f). *Smith,* 954 F.2d at 298 n. 1. For

employees who do not have a salary of $250.00 a

lishing these factors. *Smith,* 954 F.2d at 298; *York,* 944 F.2d at 241.

In the case at bar, Drexel has presented sufficient proof as to all of these three factors. Even looking at the facts presented in the light most favorable to the plaintiff, Mr. Cooper is an exempt employee for purposes of the FLSA. His annual salary was $24,000.00, which equates to a weekly salary of $461.56. As well, in his own deposition, Mr. Cooper stated that his job was to "oversee the milling process," and that he was the only supervisor for the day shift of the milling operation during his period of employment with Drexel. While Mr. Cooper stated that he sometimes worked alongside other employees, he does not appear to dispute that he normally supervised "three to four" people at any given time. While Mr. Cooper offered detailed discussion in his submissions to this court regarding other exemptions, the plaintiff has offered nothing to contest Drexel's evidence on these elements as they relate to this exemption save the bald assertion that "Plaintiff is not an exempt employee" under the FLSA. The defendants have presented sufficient proof to establish that Mr. Cooper was an exempt employee for purposes of the overtime requirements of the FLSA, and the plaintiff's failure to come forward with sufficient evidence to create a genuine issue of material fact is fatal to his claim in this regard. The defendants are entitled to a judgment as a matter of law on this issue.

## III. THE PLAINTIFF'S STATE LAW CLAIMS

### A. TORTIOUS BREACH OF CONTRACT; RETALIATORY DISCHARGE

■■■ The plaintiff has stated multiple causes of action based upon violation of his employment contract. Mississippi is an at-will employment state, and in the absence of a contract of employment for a specified term, all employees are deemed to be at-will. *Solomon v. Walgreen Co.,* 975 F.2d 1086, 1089 (5th Cir.1992); *Franks v. Magnolia Hosp.,* 888 F.Supp. 1310, 1313 (N.D.Miss. 1995); *Kelly v. Mississippi Valley Gas Co.,*

397 So.2d 874, 875 (Miss.1981). Nonetheless, if an employer such as Drexel issues a manual to its employees which sets forth provisions to be followed in "reprimanding, suspending, and discharging an employee," then the employer is obligated to follow any such provisions. *Nichols v. City of Jackson,* 848 F.Supp. 718, 724 (S.D.Miss.1994) (citing *Bobbitt v. Orchard, Ltd.,* 603 So.2d 356, 357 (Miss.1992)); *McDaniel v. Miss. Baptist Medical Ctr.,* 869 F.Supp. 445, 453 (S.D.Miss. 1994) (same); *Coleman v. Chevron Pascagoula Fed. Credit Union,* 616 So.2d 310, 311 (Miss.1993) (same). In this case it is the plaintiff's position that the defendant Drexel utilized an unwritten "reprimand" policy, where no employee could be fired until he received three written reprimands for misconduct. However, an employer may avoid the creation of any such obligation to follow policies by explicitly preserving in the employment manual itself the "at-will" nature of all the facets of the employment relationship. *McDaniel,* 869 F.Supp at 453 (citing *Bobbitt,* 603 So.2d at 357). Drexel has done so here, for the company handbook clearly states:

> It must be understood that if you are offered, and take, employment with Drexel, your employment will be for no definite term and may be terminated at any time by either Drexel or you without any prior notice.

Exhibit "C" to Defendants' Motion for Summary Judgment. The plaintiff has presented no evidence that he had a contract for a specified term with Drexel, and therefore was an employee-at-will. Thus, Drexel could fire Mr. Cooper "for a good reason, a wrong reason, or for no reason at all." *Burroughs v. FFP Operating Partners,* 28 F.3d 543, 547 (5th Cir.1994); *Berry v. Liberty Nat'l Life Ins. Co.,* 879 F.Supp. 44, 45 (S.D.Miss.1995); *Kelly,* 397 So.2d at 875. When there exists no independent consideration, employment "is terminable at the pleasure of either party." *Glasgow v. Sherwin–Williams Co.,* 901 F.Supp. 1185, 1191 (N.D.Miss.1995). The at-will employment rule is not absolute, however. There are two public policy exceptions to the rule, and an employee may not be fired for 1) refusing to commit an illegal act for his

week or more, additional factors are considered.

29 C.F.R. § 541.1.

employer; or 2) reporting an illegal act of his employer to authorities. *McArn · v. Allied Bruce–Terminix,* 626 So.2d 603, 606 (Miss. 1993). In the absence of the application of one of these exceptions, the at-will employment doctrine precludes actions for breach of contract or retaliatory discharge. *McArn,* 626 So.2d at 607; *Coats v. Penrod Drilling Corp.,* 785 F.Supp. 614, 625 (S.D.Miss.1992). There is no evidence before the court which would justify the application of either of these exceptions. The plaintiff has failed to create a genuine issue of material fact as to his claim for breach of his employment contract or for retaliatory discharge, and the defendants are entitled to a judgment as a matter of law on these claims.

### B. ARTICLE VII, § 191 OF THE MISSISSIPPI CONSTITUTION

Most novel among the plaintiff's claims is his assertion that the Mississippi Constitution of 1890 directly provides him with a cause of action against Drexel in this case:

> The legislature shall provide for the protection of the employees of all corporations doing business in this state from interference with their social, civil, or political rights by said corporations, their agents or employees.

Miss. Const., Art. 7, § 191 (1890). The plaintiff contends that this state constitutional provision is self-executing, and grants a substantive right and corresponding cause of action against Drexel in this case. Plaintiff's counsel has brought this issue before this court on at least one prior occasion. *Pegues v. Emerson Elec. Co.,* 913 F.Supp. 976, 984 (N.D.Miss.1996) (Senter, C.J.). In *Pegues,* Chief Judge Senter acknowledged the argument, but declined to determine the issue at that time, as the parties had not properly presented the matter to the court. *Pegues,* 913 F.Supp. at 984. To the knowledge of the undersigned, there is no published opinion on this point which conclusively determines the issue.

After careful consideration of the question, this court is of the opinion that the Mississippi Supreme Court, if faced with the issue, would not determine that Chapter 7, § 191 of the Mississippi Constitution of 1890 directly provides a cause of action for aggrieved parties. By its very terms, the provision is merely a directive to the state legislature to enact protective measures for the benefit of corporate employees and their "social, civil, or political rights." If § 191 was "self-enacting," the legislature would have no need to enact enforcement legislation as they are directed to do. Contrary to the assertion of the parties in this cause, the enacting legislation for this constitutional provision was indeed passed by the state legislative houses, became law as early as 1892, and is still the law today:

> § 79–1–9. Social, civil and political rights of employees protected
>
> Any corporation doing business in this state shall be liable to a penalty of two hundred fifty dollars ($250.00) for every unlawful interference with the social, civil, or political rights of any of its agents or employees, and the same may be recovered by suit, to be brought by the injured party.

Miss.Code Ann. § 79–1–9 (Supp.1995). While Mr. Cooper may have a cause of action arising under § 79–1–9, he does not have a valid claim arising directly under § 191.[4] As to the plaintiff's claim of a cause of action arising directly from § 191, the motion of the defendants shall be granted.

### C. TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; WRONGFUL DISCHARGE

The Mississippi Supreme Court has previously determined that at-will employment relationships are not governed by a "covenant of good faith and fair dealing" which gives rise to any quasi-tort cause of action for wrongful termination. *Burroughs,* 28 F.3d at 547; *Glasgow,* 901 F.Supp. at

---

4. The court does note, however, that Mr. Cooper has not stated in his complaint that he seeks to recover for a violation of § 79–1–9, but rather that he seeks to recover directly under the Mississippi Constitution. Plaintiff's Complaint, ¶ 10.

Further, as all of the remaining claims of the plaintiff are being dismissed here today, the plaintiff has failed to demonstrate what social, civil or political right Drexel has violated in order to trigger liability under § 79–1–9.

1191; *Hartle v. Packard Elec.,* 626 So.2d 106, 110 (Miss.1993); *Perry v. Sears, Roebuck & Co.,* 508 So.2d 1086, 1089 (Miss.1987). A claim of "wrongful discharge" is in essence no different from a claim of the breach of good faith and fair dealing in an employment contract. *McArn v. Allied Bruce–Terminix,* 626 So.2d 603, 606 (Miss.1993). Based upon this authority, the defendants seek summary judgment on this claim of the plaintiff. As already noted, the plaintiff has produced no evidence that he was anything but an at-will employee in this case. The motion of the defendants shall be granted as to these claims.

### D. INFLICTION OF EMOTIONAL DISTRESS

#### 1) NEGLIGENT INFLICTION

■ As to this claim of the plaintiff, the defendant initially charges that this claim is barred by the exclusivity provision of the Mississippi Worker's Compensation Act. Miss.Code Ann. § 71-3-9 (1995); *Fought v. Stuart C. Irby Co.,* 523 So.2d 314, 318 (Miss. 1988). Regardless of whether this is accurate, the plaintiff has in any event failed to produce sufficient evidence to prevail on his claim. In order to establish a claim for the negligent infliction of emotional distress, the plaintiff need not necessarily establish that he suffered a physical injury. Nonetheless, he must prove that the distress caused him injury that necessitated medical treatment:

> [I]n a case of simple, or ordinary "garden variety negligence," even in the absence of physical injury accompanying the negligent conduct, if there is a resulting physical illness or assault upon the mind, personality or nervous system of the plaintiff which is medically cognizable and which requires or necessitates treatment by the medical profession, [the Mississippi Supreme] Court has followed the modern tendency and held that a legal cause of action exists
>
> . . .

*Leaf River Forest Products v. Ferguson,* 662 So.2d 648, 658 (Miss.1995) (citing *Sears, Roebuck & Co. v. Devers,* 405 So.2d 898, 900 (Miss.1981)). Nothing before this court indicates that the plaintiff received any type of medical treatment as a result of the alleged emotional distress he suffered in this cause. There is no genuine issue of material fact as to this claim of the plaintiff, and the defendants are entitled to a judgment as a matter of law.

#### 2) INTENTIONAL INFLICTION

■ In *Dandridge,* this court also discussed the tort of "intentional infliction of emotional distress" under Mississippi law:

> In the seminal case of *Sears, Roebuck & Co. v. Devers,* the Mississippi Supreme Court pronounced the standard of law for a claim of intentional infliction of emotional distress:
>
> > Where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally—or even unintentionally yet the results being reasonably foreseeable—Courts can in certain circumstances comfortably assess damages for mental and emotional distress, even though there has been no physical injury. In such instances, it is the nature of the act itself—as opposed to the seriousness of its consequences—which gives impetus to legal redress.
>
> *Sears, Roebuck & Co. v. Devers,* 405 So.2d 898, 900 (Miss.1981). This standard still prevails in Mississippi today. *See Leaf River Forest Prods. v. Ferguson,* 662 So.2d 648, 658 (Miss.1995) (citing *Sears*); *Peoples Bank & Trust Co. v. Cermack,* 658 So.2d 1352, 1365 (Miss.1995) (same). In essence, the plaintiff must generally demonstrate that the defendants committed wanton and willful conduct which would cause outrage or revulsion. *Peoples Bank,* 658 So.2d at 1366. It is important to note that the conduct itself must be "extreme and outrageous."
>
> > It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Burroughs v. FFP Operating Partners, L.P.,* 28 F.3d 543, 546 (5th Cir.1994) (citing *White v. Walker,* 950 F.2d 972, 978 (5th Cir.1991)).

Other states which apply this tort similarly note that "[r]ecognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *White v. Monsanto Co.,* 585 So.2d 1205, 1210 (La.1991); *see, e.g., Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 654–55 (5th Cir.1994) ("Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress"; court found sexually explicit and vulgar harassment of female employee which occurred on *daily* basis to be extreme and outrageous).

*Dandridge,* 914 F.Supp. at 1405. In the opinion of the court, the plaintiff in this case has not demonstrated that the facts at bar go beyond the "realm of an ordinary employment dispute" and are therefore insufficient to state a claim for the intentional infliction of emotional distress. While the facts as presented to the plaintiff may be upsetting to him, the acts attributed to the defendants are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." There is no genuine issue of material fact as to this claim of the plaintiff, and the defendants are entitled to a judgment as a matter of law.

### E. DEFAMATION *PER SE*

In order to prevail on his claim of defamation, the plaintiff must establish:

1. a false and defamatory statement concerning the plaintiff;
2. unprivileged publication to a third party;
3. fault amounting at least to negligence on the part of the publisher; and
4. either the actionability of the statement irrespective of special harm or existence of special harm caused by publication.

*Eselin–Bullock & Associates Ins. Agency, Inc. v. National General Ins. Co.,* 604 So.2d 236, 241 (Miss.1992); *Blake v. Gannett Co., Inc.,* 529 So.2d 595, 602 (Miss.1988); *Fulton v. Mississippi Publishers Corp.,* 498 So.2d 1215, 1216 (Miss.1986). "The threshold question in a defamation action is whether the statement bears the meaning ascribed to it by the plaintiff and whether that meaning is defamatory, and if the court decides against the plaintiff on either question, the case is ended." *Fulton,* 498 So.2d at 1216. However, each case involving slander is to be determined based upon the particular facts and circumstances. *Southwest Drug Stores Of Miss., Inc. v. Garner,* 195 So.2d 837, 842 (Miss.1967).

The first element of a defamation claim is a "false and defamatory statement." In the case at bar, the plaintiff has failed to even allege in his submissions what statements were made by the defendants in this case which were defamatory. In response to the defendants' motion on this point, the plaintiff merely states "Plaintiff should be allowed to put on proof at trial of defamatory allegations concerning Plaintiff's alleged job performance that may have been made by ... Drexel," and further notes that there needs to be "further fact finding on the issue." This is wholly insufficient to avoid the entry of summary judgment. This case was originally filed by the plaintiff on June 5, 1995, and the period for discovery in this cause ended on March 8, 1996. The plaintiff has available to him no further formal discovery, and this court does not hold trials simply so that counsel may conduct a "fishing expedition" for relevant evidence.

Further, of primary importance to the defendants with regard to their motion on the plaintiff's claim for defamation is the doctrine of privilege. In particular, the defendants correctly point out to the court that Mississippi public policy imposes a qualified privilege upon statements made by an employer against an employee when the state-

ments in question affect the latter's employment. *Burroughs,* 28 F.3d at 547; *Young v. Jackson,* 572 So.2d 378, 383 (Miss.1990); *Holland v. Kennedy,* 548 So.2d 982, 987 (Miss.1989).

> Absent spite, ill will, malicious purpose, or wanton disregard for the veracity of the statements and where the communications are limited to those persons who have a legitimate and direct interest in the subject matter, the communications are privileged, and a presumption of good faith attaches.

*Burroughs,* 28 F.3d at 547. In addition, Mississippi statutory law shields with privilege any communication made by an employer to the Mississippi Employment Security Commission with regard to an employee. Miss.Code Ann. § 71–5–131; *McArn,* 626 So.2d at 608.

The plaintiff has failed to put forth any evidence of the existence of the alleged defamatory statements in this case, nor that any such statements can overcome these two asserted privileges. In his complaint, the plaintiff charges the defendants with making "false allegations of unsatisfactory job performance." The context of these allegations and their defamatory nature has not been demonstrated, nor has any malice been presented. The motion of the defendants shall be granted as to the plaintiff's defamation claim.

**F. CIVIL CONSPIRACY**

The remaining cause of action charged by the plaintiff is one for civil conspiracy. A conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully. *Smith v. St. Regis Corp.,* 850 F.Supp. 1296, 1323 (S.D.Miss.1994) (citing *Shaw v. Burchfield,* 481 So.2d 247, 255 (Miss.1985)); *Roussel v. Hutton,* 638 So.2d 1305, 1315 (Miss.1994). "There is no actionable conspiracy, however, where all that is shown is the exercise in a lawful manner of a right to terminate a contract." *Shaw,* 481 So.2d at 255. As already discussed, there is no evidence before the court that the defendants did anything but lawfully terminate an employment contract. In addition, a conspiracy

requires more than the involvement of one entity in order to exist. When individual defendants are not shown to have acted outside of their employment capacities, they are incapable of conspiring with their corporate employer. "A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir.1994) (citing *Nelson Radio & Supply Co. v. Motorola,* 200 F.2d 911, 914 (5th Cir. 1952)). There is no evidence before the court that defendant Marc Gilbertson acted in anything but his capacity as an agent of Drexel in this case, and the plaintiff has neither alleged nor presented evidence that other conspirators exist outside of Drexel Chemical Company. As to the plaintiff's claim of civil conspiracy, the motion of the defendants shall be granted.

*CONCLUSION*

There is no genuine issue of material fact as to the plaintiff's claims at bar, and the defendants are entitled to the entry of a judgment as a matter of law. The motion of the defendants shall be granted.